UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA                                        Plaintiff

v.                                                    Criminal Action No. 3:12-CR-104

JOSHUA EWING                                                    Defendant

* * * * *

**MEMORANDUM OPINION & ORDER**

Defendant Joshua Ewing ("Ewing") moves for compassionate release and reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A) and appointment of counsel. [DE 454]. The Court ordered the United States to respond [DE 462] and a response was timely filed [DE 469].

Ewing is also potentially eligible for a sentence reduction under 18 U.S.C. § 3582(c)(2) for retroactive application of Part A of Amendment 821 of the Federal Sentencing Guidelines. [DE 464]. Pursuant to General Order No. 23-14, the Court has established procedures to determine whether certain defendants may qualify for a reduction of their sentence in accordance with Amendment 821 of the U.S. Sentencing Guidelines Manual and pursuant to 18 U.S.C. § 3582(c)(2). [DE 463]. In accordance with the Court's procedures, the United States Probation Office ("USPO") prepared a Memorandum of Recalculation which was provided to the Court and to the office of the Federal Public Defender. [DE 463; DE 464]. The United States responded opposing the sentence reduction [DE 469] and the Public Defender responded in support of the reduction [DE 471]. Ewing also filed a letter appearing to respond to the United States assertions regarding his disciplinary history while incarcerated. [DE 472].

1

These matters are ripe.  For the reasons below, the Court **DENIES** Ewing's motion for appointment of counsel and compassionate release under § 3582(c)(1)(A) [DE 454] and will **GRANT** Ewing a sentence reduction under 18 U.S.C. § 3582(c)(2) as set forth below.

## I.      BACKGROUND

On July 3, 2013, Ewing was convicted by a jury for bank robbery and brandishing a firearm in relation to a crime of violence. [DE 111]. The district judge at sentencing, Judge Heyburn, sentenced Ewing to 161 months in prison followed by two years of supervised release. [DE 129]. Ewing appealed his convictions, and the Sixth Circuit affirmed the decision of the district court. [DE 240]. Ewing filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, which was denied [DE 292; DE 334]. Ewing appealed the denial of his § 2255 motion, and the Sixth Circuit dismissed the appeal. [DE 365]. Ewing then filed a motion for compassionate release based on the COVID-19 pandemic [DE 409] which the Court denied. [DE 424]. Ewing next filed what the Court construed as a second § 2255 motion [*see* DE 452; DE 453] which was transferred to the Sixth Circuit and was dismissed for want of prosecution. [DN 460].

Ewing now moves again for compassionate release and a reduction in sentence, in addition to appointment of counsel. [DE 454]. Also, the USPO has found Ewing eligible for a sentence reduction based on retroactive application of Amendment 821 to the Sentencing Guidelines and set forth a modified calculation of 147 months of imprisonment. [DE 464].

## II.     ANALYSIS

### A.  Motion for Compassionate Release and Appointment of Counsel [DE 454].

Ewing's second motion for compassionate release is brief and appears to place the onus on the Court to find reasons for compassionate release.  He states only that "because he was under the age of 25 and his mental capacity was diminished because of his youth. In fact, Mr. Ewing was

only 21 years of age.  Since being incarcerated the Movant has been diagnosed with Bipolar and Anxiety disorder, ADHA and a history of suicidal tendencys [sic].  For these reasons the Movant asks the Court to investigate reasonable application of this act to his case."  [DE 454 at 3369].  He also requests the Court "[t]o approve counsel for Mr. Ewing in this matter because he is a layman." [*Id.*].

1.  <u>Exhaustion of Administrative Remedies.</u>

An inmate may seek compassionate release by the district court only after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022) (en banc) (describing statutory changes to exhaustion process). This exhaustion requirement is waivable, not jurisdictional—but becomes "mandatory" if the Government invokes it. *United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020); *United States v. Taylor,* No. 20-3642, 2020 WL 7383648, at *1 (6th Cir. Nov. 9, 2020).  It is the defendant's burden to show that he has exhausted his administrative remedies. *United States v. Pena-Lora*, No. 15-20695, 2020 WL 3886384, at *1 (E.D. Mich. July 9, 2020); *United States v. Smith*, No. 6:13-CR-34-KKC, 2024 WL 3566697, at *1 (E.D. Ky. July 29, 2024).

Although Ewing satisfied the exhaustion requirement before filing his first motion for compassionate release on COVID-19 grounds—which the Court denied—the government asserts that the BOP has confirmed that Ewing did not file any request for a reduction in sentence before filing this second motion for compassionate release. [DE 469 at 3463]. Accordingly, the Court finds that Ewing has not exhausted his administrative remedies, and because exhaustion is a "mandatory condition" the government has not waived, the Court must enforce it. *Alam*, 960 F.3d

at 833. Yet, as outlined below, even if Ewing's original request to the BOP qualified as exhausting his administrative remedies for purposes of this motion, his motion would still fail on the merits.

## 2. Sixth Circuit "Three-Step Inquiry."

"Generally speaking, once a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Hammond*, 712 F.3d 333, 335 (6th Cir. 2013). Section 3582(c)(1)(A) grants that authority in certain limited circumstances. "Congress's use of 'may' in § 3582(c)(1)(A) dictates that the compassionate release decision is discretionary, not mandatory." *United States v. Jones*, 980 F.3d 1098, 1106 (6th Cir. 2020). That said, district courts must "supply specific factual reasons for their compassionate release decisions." *Id.* at 1101-02.

After addressing exhaustion, district courts apply a "three-step inquiry" in considering a compassionate-release motion filed under § 3582(c)(1). *United States v. Elias*, 984 F.3d 516, 518 (6th Cir. 2021) (quotation omitted). Release is appropriate only if (1) the prisoner shows that "extraordinary and compelling reasons warrant the [sentence] reduction," (2) the Court determines that "any sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) the prisoner "persuade[s] the district judge to grant the motion after the court considers the § 3553(a) factors." *McCall*, 56 F.4th at 1054 (quotations omitted). District courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking. *Elias*, 984 F.3d at 519.

The Sentencing Commission recently amended the compassionate-release policy statement to describe six categories of extraordinary and compelling reasons that individually, or in combination, may support compassionate release. The updated policy statements "provide[] a non-exhaustive list of various circumstances that either alone or in combination qualify as extraordinary

4

and compelling reasons for a sentence reduction." *United States v. Whitworth,* No. 1:23-CR-561-4, 2023 WL 8190131, at *2 (N.D. Ohio Nov. 27, 2023). The categories are: (1) the medical circumstances of the defendant; (2) the age of the defendant; (3) the defendant's family circumstances; (4) sexual or physical abuse suffered by the defendant while in custody involving a "sexual act" or "serious bodily injury;" (5) "other reasons" similar to those in (1)–(4); and (6) an "unusually long sentence." U.S.S.G. § 1B1.13(b).

The § 3553(a) factors to be considered include the prisoner's "history and characteristics, including his propensity to be a danger to the community upon release, as well as the nature and circumstances of his offense." *United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (citing § 3553(a)(1)–(2)).

> Among the variety of items that courts have considered in this step are conditions at the place of incarceration, the defendant's health issues, whether the defendant is receiving medical treatment for his or her health issues, the defendant's behavior in prison, the type of offense(s) for which the defendant was convicted, whether the defendant had prior criminal convictions (and, if so, how many and the seriousness of such crimes), whether the defendant had prior juvenile convictions, whether the defendant previously complied with any presentence or post-incarceration conditions, the amount of the sentence that the defendant has served to date, whether the court varied downward from the guidelines range when imposing the sentence, whether the defendant has had a drug addiction, the defendant's successful participation in substance abuse programming or other rehabilitation efforts while incarcerated, the defendant's successful participation in educational or vocational training while incarcerated, and whether the defendant took responsibility for his or her actions.

*United States, v. Pooler*, No. 3:18-CR-00137, 2020 WL 7046964, at *5 (S.D. Ohio Dec. 1, 2020) (citing *Jones*, 980 F.3d at 1114; *United States v. Ruffin*, 978 F.3d 1000, 1008-09 (6th Cir. 2020)); *see also* 18 U.S.C. § 3582(c)(1)(A)(i) (a court should consider "the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable"). But post-sentencing rehabilitation, standing alone, "does not rise to the level of an extraordinary and compelling reason for granting compassionate release." *United States v. Harper*, No. 22-1291, 2023 WL 10677931, at *3 (6th Cir.

Dec. 12, 2023); *Jackson,* 2023 WL 9023349, at *2 (citing *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020)).

The defendant bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See United States v. Karr*, No. 6:17-CR-25-REW, 2020 WL 774363, at *6 (E.D. Ky. Feb. 18, 2020).

3.   No Extraordinary and Compelling Reasons Warrant Early Release.

Here, Ewing appears to focus on his medical circumstances, specifically his mental health diagnoses, and his age at the time of his crime.   [DE 454 at 3369].

i.      *Youth at time of commission of crime.*

Ewing first argues extraordinary and compelling reasons exist because he "was only 21 years of age" at the time he committed his crimes and "his mental capacity was d[i]minished because of his youth." [DE 454 at 3369]. Yet Ewing's age and mental capacity due to his youth were facts known and considered by the court at the time of sentencing. Ewing's mother spoke at his sentencing, specifically mentioning his youth as a reason for "asking [for] a little mercy" [DE 158 at 1140]. In response, the Sentencing Court noted that although Ewing "cited some other cases where judges have given lesser sentences under the circumstances . . . I don't really see a legal basis for reducing the sentence here." [*Id*. at 1141]. As a result, Ewing's youth would not constitute extraordinary and compelling reasons warranting a sentencing reduction. *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022) ("Facts that existed at the time of sentencing do not constitute an extraordinary and compelling reason warranting a subsequent sentence reduction.").

Moreover, to the extent that some courts have found youth and mental capacity were extraordinary and compelling reasons that warranted compassionate release, those courts also found that the defendant had been rehabilitated—that the defendant's mental capacity was

different than it was at the time of sentencing. *See e.g., Brito v. United States*, No. 11-CR-576 (PKC), 2024 WL 1597787, at *6 (S.D.N.Y. Apr. 12, 2024) (finding that the prisoner "presents himself as a different person than the 19-year-old who stood before Judge Pauley for sentencing . . . [t]he need to protect the public from further crimes of this defendant has somewhat dissipated from his age, maturity, education and plans for the future.); *United States v. Scruggs*, No. 99-200, 2021 WL 3115819 (E.D. Va. July 22, 2021) (noting that the prisoner "was slightly more than 19 years old when he committed the offenses of conviction . . . [t]he record in this case is laden with letters from all manner of personnel at FCI Bennettsville attesting to the fact that [the prisoner] has been rehabilitated and has put to productive use the time that he has spent in prison.").

In contrast, Ewing has not offered any evidence of rehabilitation. Just the opposite: Ewing's disciplinary record over the past ten years reflects that he assaulted another inmate, [DE 469-1 at 3483], attempted to assault prison staff, [*id*. at 3477], "threatened to cut staff's head off and stuff her in a car trunk," [*id*. at 3472], possessed various narcotics, including methamphetamine and heroin, [*id*. at 3475; 3480; 3482] and on two occasions possessed a dangerous weapon [*id*. at 3470.]. Under such circumstances, "[t]he Court is not persuaded that [Ewing's] youth—which the Court considered when originally pronouncing [Ewing's] sentence—now constitutes an extraordinary and compelling reason justifying a sentence reduction." *United States v. Walton*, No. 09-157, 2022 U.S. Dist. LEXIS 107312, at *10 (E.D. La. June 16, 2022) (finding youth and mental capacity were not extraordinary and compelling factors warranting compassionate release when those facts were known and considered by the sentencing court and prisoner had extensive disciplinary history, including assault of another inmate, drugs, and possession of a weapon while incarcerated.).

ii.    *Mental health treatment.*

Ewing also argues that extraordinary and compelling reasons exist because "since being incarcerated, [Ewing] has been diagnosed with Bipolar and Anxiety disorder, ADHD and a history of suicidal tend[encies]." [DE 454 at 3369]. The Sentencing Commission's policy statement reflects that a prisoner's medical condition may be an extraordinary and compelling reason for compassionate release if his condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," § 1B1.13(b)(1)(B)(i-iv); or if the defendant "is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." § 1B1.13(b)(1)(C).

In a letter to the Court, Ewing states that his anxiety, bi-polar and intermittent explosive disorder is going untreated by the BOP. [DE 472 at 3508]. But Ewing provides no evidence that the BOP is failing to provide medical care—much less medical care that places Ewing at risk of serious deterioration in health or death—or that his condition has substantially diminished his ability to provide self-care while imprisoned. Indeed, Ewing himself states that he "[doesn't] know if I'm getting worst [sic] or not," and that he has been prescribed "Zoloff [sic] and Remeron" for his conditions. [*Id.*]. Moreover, to the extent that Ewing has not received certain medical care, his medical records reflect that he is noncompliant with his medical treatment and regimens. [DE 469-6 at 3502]. Accordingly, Ewing has failed his burden to show that his medical conditions rise to the level of an extraordinary and compelling reason for compassionate release. Because compelling and extraordinary reasons do not exist, the Court need not examine the 3553(a) factors in the context of compassionate release but does examine them below for purposes of 18 U.S.C. § 3582(c)(2).

8

4.  <u>Appointment of Counsel.</u>

There is no general constitutional right to appointed counsel in post-conviction proceedings, *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987), including proceedings under 18 U.S.C. § 3582(c). *See United States v. Prater*, No. 7:15-11-DCR-3, 2020 U.S. Dist. LEXIS 90385, at *3 (E.D. Ky. May 22, 2020). A district court has discretion, under 18 U.S.C. § 3006A(a)(2), to appoint counsel when "the interests of justice so require." In exercising discretion on whether to appoint counsel, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

Upon review, the Court finds that the issues involved in seeking compassionate release are not complex or beyond the capability of an ordinary *pro se* litigant and that Ewing's multiple filings (including a previous motion for compassionate release) reflect his ability to present his claims to this Court. As a result, the motion for appointment of counsel is denied.

**B.  Motion for Retroactive Application of Amendment 821.**

On April 27, 2023, the United States Sentencing Commission ("USSC") submitted to Congress Amendment 821, which became effective November 1, 2023.  Amendment 821 contains two retroactive provisions. Part A of Amendment 821 decreases "status points" by one point for defendants with seven or more criminal history points and eliminates "status points" for defendants with six or fewer criminal history points. "Status points" are those points that were applied under then United States Sentencing Guideline ("U.S.S.G.") § 4A1.1(d) if the defendant committed his or her federal offense while on probation, parole, supervised release, imprisonment, work release, or escape status. Part B of Amendment 821 provides for a decrease of two offense levels for "zero-

point offenders" (no criminal history points), whose offense did not involve specific aggravating factors.

Deciding a motion for retroactive application of Amendment 821 under 18 U.S.C. § 3582(c)(2) requires two steps. First, the Court determines whether the defendant is eligible for relief under the amendment, and then it must consider whether reducing the sentence is supported by the factors set forth in 18 U.S.C. § 3553(a). *Dillon v. United States*, 560 U.S. 817, 826 (2010) (citing § 3582(c)(2)). Even if a reduction is authorized under § 1B1.10 of the Guidelines, the Court must determine whether consideration of the 18 U.S.C. § 3553(a) factors indicate a reduction is warranted. *Id.* at 826. "[D]istrict courts are empowered to provide process and to consider resentencing factors as they see fit." *United States v. Boulding*, 960 F.3d 774, 783 (6th Cir. 2020). While the District Court must consider "all [of] the . . . factors," it has "discretion [to] plac[e] more 'weight on one factor' because the particular facts in [a] case warrant[ ] doing so." *United States v. Adkins*, 729 F.3d 559, 572 (6th Cir. 2013) (citation omitted). "While a district court need not explicitly . . . recite a list of [the § 3553(a)] factors, it must provide a reasoned explanation for its choice of sentence [that is] sufficiently thorough to permit meaningful appellate review." *United States v. Blackwell*, 459 F.3d 739, 773 (6th Cir. 2006).

Consistent with Amendment 821 and §4A1.1(d), the USPO found Ewing is eligible for a reduction in status points, resulting in a recalculated six criminal history points—Criminal History Category III. [DE 464 at 3416]. The Court directed the United States to respond to whether and to what extent Ewing should be granted a sentence reduction. [DE 463]. The United States agrees with the USPO recalculated Criminal History Category of III. [DE 469 at 3556-57]. This would result a modified Guideline Range of 63 to 78 months for Count 7. [DE 469 at 3556-57]. Count 9 remains subject to the mandatory minimum of 84 months. [*Id.*]. As such, Ewing's total revised

Guideline Range is 147 to 162 months.  [*Id.*].  It contends, however, that the sentencing factors of § 3553(a) do not support the seven-month reduction because Ewing's "dangerousness" and the "nature and seriousness of the crimes weigh against relief."  [*Id.* at 3460].

Ewing, represented in the Amendment 821 recalculation by the Federal Defender, agrees that he is entitled to the seven-months reduction.  [DE 471 at 3505].  Ewing also responds that the United States' opposition

> largely parrots the arguments that were made in their original sentencing memorandum, where they asked the sentencing court to impose a mid-range 170-month sentence (the original guideline range that was determined at sentencing was 161-180 months). *See*, DN 128 at 526-528. These arguments were heard, and rejected, by the sentencing court which imposed a low-end guideline range sentence of 161 months.
>
> \*\*\*
>
> The United States concedes that Mr. Ewing is eligible for a reduction in his sentence pursuant to Amendment 821, nonetheless they object to any reduction in sentence. DN 469 at page 4. Mr. Ewing's current sentence of 161 months is one month shorter than the high-end of his amended guideline range of 147-162 months. DN 464. Essentially, the United States is asking this Court to allow Mr. Ewing to serve a high-end guideline range sentence, based upon the same arguments that they originally made asking for a mid-guideline sentence - all of which was rejected by the sentencing court when imposing a low-end guideline sentence.

[DE 471 at 3505-06].

The Supreme Court has determined that courts may consider post-sentencing conduct in assessing the § 3553(a) factors when considering whether to adjust a previously imposed sentence. *Pepper v. United States*, 562 U.S. 476, 487–93 (2011). Here, the district court is permitted to consider Ewing's post-conviction conduct, which includes his behavior in prison. Ewing's lengthy disciplinary history in prison reflects violent behavior and possession of narcotics while in prison. [*See* DE 469-1]. Thus, the district court may consider Ewing's disciplinary sanction record in

11

making its determination, as part of its § 3553 analysis. *United States v. Osborne*, 860 F. App'x 77, 80 (6th Cir. 2021). However, this is not the only factor on which this Court places weight.

The Court reviewed the record as a whole and independently weighed the sentencing factors in § 3553(a). The Sentencing Court chose a low-end guideline sentence after consideration of all the arguments remade before this Court in opposition to the Amendment 821 recalculation. Given all the facts and circumstances, this Court agrees a low-end sentence was and is warranted. That low-end is now reflected as 147 months as opposed to 161 months, roughly a 14 month or year difference. This is still a significant sentence reflecting the seriousness of the crime. Moreover, while Ewing does have a disciplinary record while incarcerated these issues do appear to be related to his mental conditions and subject to treatment by the Bureau of Prisons.

The adjusted sentence remains consistent with the factors considered at the time of sentencing, continues to reflect the seriousness of the offence, avoids disparity, provides just punishment, and promotes respect for the law.

### III.    CONCLUSION

For all these reasons, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821 to the United States Sentencing Guidelines, Defendant Ewing's custodial sentence is **REDUCED** to a term of 147 months (63 months as to Counts 7, and 84 months consecutive as to Count 9 as required by statute). All other aspects of the original sentence remain in place. An Amended Judgment (AO form 247) will be entered contemporaneously with this Memorandum Order.

**IT IS FURTHER ORDERED** that Defendant's Motion for compassionate release, reduction of sentence, and for appointment of counsel [DE 454] is **DENIED**.

Rebecca Grady Jennings, District Judge

United States District Court

August 16, 2024

cc:  Defendant, pro se